25-5039. Council, you may proceed. May it please the court, Will Wright on behalf of Mr. Rodney. And we're here today because Mr. Rodney has not been given his constitutional right to just compensation, either under the Oklahoma Constitution takings provision, which is Article 2, Section 24, or the U.S. Constitution Fifth Amendment takings provision. In 2011, the city came on to Mr. Rodney's property in the city of Catoosa and with six foot rebar and an orange fence, took control and dominion over his property because they believed he needed a permit. The problem for Mr. Rodney was he had already gone to administrative hearing and the city had already made a decision no permit was required. In the 2011 cease and desist order that was served on Mr. Rodney, along with the fence that was placed on his property, Mr. Rodney attempted to work out a resolution to no avail. In 2014, Mr. Rodney filed suit in Rogers County District Court. And I'll read to you just the statement, one statement he made. City of Catoosa has caused damages by way of inverse condemnation in excess of $10,000. The city of Catoosa has taken away the plaintiff's rights without compensation by prohibiting the plaintiff from entering onto plaintiff's own property without plaintiff's consent. The Oklahoma Constitution guarantees a jury trial. That is Article 2, Section 19. When you're asking for money damages, you are guaranteed a right to trial by jury under the Oklahoma Constitution. What about statute of limitations? Statute of limitations can be told under Oklahoma Title 12, Section 100. And if not told here, then you would lose. That's correct. Okay, so Title 12, Section 100 has been interpreted by this court to apply to a Section 1983 claim. So regardless of whether it's a constitutional claim, a liberty claim, if it's a Section 1983 claim, Section 100 in Title 12 is a savings provision. And the savings provision tolls the statute of limitations. The case that was pending in the state court did not complete until 2024 when final mandate came out. The tolling statute, and this is an important point. What happened in 2024? That was the completion of the entire state action. So the state action went to state trial court. Then the state action went to the state court of appeals. And then there was a petition for cert to the state Supreme Court. The cert was denied. So interpreting the tolling provision of Section 100, you commence your second action if you have the right to refile your action. And the commencement date begins on the date that cert was denied. And what is your argument for why you had the right to refile your action? The tolling provision specifically does not address judgment, summary judgment, dismissal, dismissal with or without prejudice. What the tolling statute, the text of the tolling statute says is if the action fails other than on the merits. And in our briefing, Mr. Rodney argues that the state action failed other than on the merits. Isn't that contrary to what the intermediate court of appeals said? No. I disagree. The court of appeals said Rodney cannot maintain an inverse condemnation claim under any set of facts because he failed to exhaust his administrative remedies prior to filing the instant action. But didn't the court also say as a matter of law there was no taking? It did. It dropped a footnote. But how should we be thinking about that? What was the basis? The basis was rescission. So you have no takings because you got the relief of rescission. That isn't what the U.S. Supreme Court interprets the Fifth Amendment. Just compensation is the remedy, not rescission. But wasn't this an interpretation of Oklahoma takings law? That is correct. In Oklahoma takings. And you think maybe that was wrong for them to say there was no taking? Yes. Right or wrong, it's still not a decision on the merits. Well, why not? Because the decision was based on rescission. That was the underlying basis for the court of appeals decision. You got your relief. Can you elaborate? When you say rescission, is it because the court said that there was no exhaustion of administrative remedy? In other words, that they hadn't got an administrative decision? Well, it's confusing because, on the one hand, the court says you failed to exhaust. And on the other hand, the court says you were granted relief because you did your administrative remedy. So, on the one hand, we've got failure to exhaust, which is jurisdictional under Oklahoma law, and it's a lack of jurisdiction. If you fail to exhaust, it's lack of jurisdiction. Lack of jurisdiction is not on the merits. What was the basis for your cert petition then? The mootness. We were saying you have jurisdiction. So, at some point, Mr. Rogney has to get relief for just compensation under, whether it's the Oklahoma Constitution or the U.S. Constitution, just compensation is the remedy. He was not provided a remedy for his constitutional, guaranteed, fundamental right of just compensation. What the city argued in the state court, plaintiff exhausted his administrative remedies and prevailed. Because he was successful in obtaining a rescission of the CDO, that's the cease and desist order, the plaintiff's sole remaining claim is not No case in controversy. So, the city in the state action was arguing there is no case or controversy. Your claim is moot. And under case law, both in Oklahoma and U.S. Supreme Court precedent, and this court, a moot case is not a case on its merits. The city argued in the state court agreed with the city and terminated the action. The action was terminated because plaintiff's inverse condemnation claim is moot. Those are the words of the city. The city argued to the state trial court the plaintiff's remaining claim is founded on the CDO, which is the cease and desist order. The cease and desist order is no longer in existence. Accordingly, there is no longer a case or controversy for this court to decide. The plaintiff's claim is moot. Well, so the district court dismissed on mootness grounds, endorsing the city's argument, right? Agreed. But then the Oklahoma Court of Appeals conducted a de novo review and concluded as a matter of law, under Oklahoma law, that there was no taking. And so it may be that the basis for that decision is something that you can test. But what we need to decide is whether that decision, not the mootness question, because that was not the basis of the Oklahoma Court of Appeals determination, whether the matter of law decision that there was no taking somehow gets you tolling, because it wasn't a decision on the merits. And it seems to me that it is a decision on the merits with which you disagree. The administrative remedy was rescission in the eyes of the Court of Appeals. Rescission is not on the merits of a just compensation. Mr. Rodney is here today because he has not been compensated to which he is entitled to. Every step of the way, which court has jurisdiction to hear his compensation claim? Which court? We're here today asking you to allow him. Counsel, what I think these questions are getting at is what is the language in that footnote doing there then if they say there was no taking? Was it just a throwaway line? Is that what you're saying? I agree. Dicta? Advisory opinion? What did the Court of Appeals actually do? They affirmed. They didn't reverse, consistent with our findings. They didn't do a finding of fact as to what a taking is. Appellate courts are not findings of fact. We don't make findings of fact in the appellate courts. Oklahoma is consistent with this court. Counsel, is the statement that no taking occurred a finding of fact? Isn't that a legal conclusion? It's a legal conclusion based on an administrative remedy that had failed. It was not that under Oklahoma law, in order to determine what a taking is, there has to be a finding of fact by a jury or trial or trier of fact as to substantial interference. Do we have a record in any of the court where there was a finding of fact of substantial or not substantial interference? So I do agree that that was dicta. I agree that it was an advisory opinion. Well, what do you mean agree? I don't know who you're agreeing with. You're arguing that. I'm sorry. Let me ask you this. I thought one of your arguments was that you actually did challenge the no taking secured conclusion in the footnote because the court didn't consider whether there was substantial interference with the property or just compensation. What happened to that argument? Mootness was the issue. No, that's not what I asked you. You made that argument in your brief. You haven't said anything about it this morning. Are you waiving it? No. Which argument is that? I'm sorry. The argument that the court didn't consider whether there was a substantial interference with the property. In other words, a temporary taking between 2011 and 2017.  They did not. All right. So is that what your argument is about that no taking occurred? Are you saying that that was wrong because the court didn't consider that? I'm just asking you what you put in your brief. I understand. Well, do you want to explain it then? How do you connect it to the no taking occurred? I thought you were challenging the no taking occurred because the court didn't do the analysis to get to that conclusion. Is that a misreading of your brief? No, Your Honor. Okay. And is that the argument you're still making? There was a taking. That's the argument. That the footnote that was dropped was a, oh, by the way, footnote because what it is footnoting is he failed to exhaust his administrative remedies prior to filing the instant action. That was the holding. And it affirmed the judgment. And what was the judgment? The underlying judgment was not judiciable. No case or controversy. So if you're affirming mootness, you don't have jurisdiction or power, as Article 3 would say. You don't have power to make any other rulings under U.S. Supreme Court precedent under. You're saying mootness in state court? Church of Scientology. No jurisdiction to give opinions other than on any other questions. So if we're deciding that it's moot, then it's moot. Well, who decided it was moot? The district court? Wait, wait. The federal district court? No, no, no. The state district court decided it was moot. Article 3 applies to federal courts. So is there some, what's the mootness doctrine in Oklahoma? The city argued the mootness doctrine. Under Article 3, they argued federal application to the constitutional claim in the state court. Well, whether it was right or wrong, my understanding of what the Intermediate Court of Appeals said, is there's no taking because Mr. Rogney was granted relief as soon as he sought an administrative remedy and the city rescinded the cease and desist order. That's why no taking. Did the Court of Appeals affirm mootness? If the Court of Appeals affirmed the judgment, the lower judgment, that was decided that it had no jurisdiction, then there is no jurisdiction to make that decision. What I just read to you, though, it says there's no taking because once you came to us with the administrative remedies, you got relief. Rescission, not just compensation. They rescinded the bad act. Under Nick, the U.S. Supreme Court, rescinding of the illegal conduct is not a bar to a takings claim. That would be first English. They cited first English in the most recent U.S. Supreme Court case. And Del Valle cited both Nick and cited first English that rescission is not a bar. And so the basis for the state action was rescission. I'd like to reserve the rest of my time. I don't think you've got more time. Are we over time? You've gone over your time. Oh, I've gone over my time. I'm sorry. That's all right. Good morning, Your Honors, and may it please the Court. Allison Parker here on behalf of the city of Catoosa. I want to take a moment and go back through some of the history of the state court litigation because I think our timeline is confusing and that there are a few things that counsel didn't mention that might be helpful to your analysis. There were two cease and desist orders. One was in 2009. Mr. Rogni sought administrative remedy and got that rescinded. In 2011, another cease and desist order was issued by the city of Catoosa. Rather than seek his administrative remedy at that time, Mr. Rogni chose to file a lawsuit in state court. It wasn't until 2016, after the city filed a motion for summary judgment arguing failure to exhaust administrative remedies, amongst other things, that Mr. Rogni asked for a stay of that case, and he sought his administrative remedy, at which point he gained rescission. But now we're talking six years after the CDO was issued. So there is this delay between the CDO being issued and him actually deciding to seek his administrative remedy, and I think that delay informs the Court of Civil Appeals decision that there was no taking. I mean, can he self-create a temporary taking by failing to exhaust his administrative remedies? So that is important. Also, in the district court, the final order is based upon not only the city's motion to dismiss for a lack of a justiciable claim after the rescission, it was also based on granting a summary judgment that the city had previously filed in 2016. Mr. Rogni did not respond to that motion for summary judgment, and months had gone by since the stay had been lifted. So there were other issues that the Court of Civil Appeals could look at in their de novo review of the file in their decision. I disagree that the footnote is dicta. I think it is very responsive to one of Mr. Rogni's issues on appeal. How is it necessary to the ruling, to the holding? I think it was necessary to that appeal because one of the issues that Mr. Rogni raised on appeal is the same issue that he is raising today, that he was deprived of his constitutional right to get compensation for that temporary taking. And I think that prompted the court to say, well, we don't see a taking. Could Mr. Rogni's complaint be read to assert a takings clause claim independent of the 1983 claim? I don't think so. And this brings us to what happened with the Nick filing. While the state court case was proceeding and during the course of it, the Supreme Court issued the Nick decision. And that decision did away with the requirement that you exhaust your state court remedies before you can bring a federal takings claim. That was in 2019. So at that point, Mr. Rogni could have filed a federal takings claim in federal court or otherwise amended his pleadings in the state court action. That didn't happen. So now he wants to argue that it's going to toll from the conclusion of a state court case where he didn't have a federal takings claim alleged. So he just, it's too late for the claim. He could have brought it in 2019. And under 10th Circuit law, a 1983 claim does accrue at that point when you are able to bring the cause of action. There is an issue raised in Mr. Rogni's reply brief that I think you're getting at, Your Honor. And he cited for the first time on appeal, a recently decided 11th Circuit case that states that you can bring independently from a 1983 action, a claim, a federal takings claim without going through the vehicle of Section 1983. That case was decided between the city responding on appeal and Mr. Rogni's reply brief. I don't think that case is at issue here. We have a pending motion to file a SIR reply. I don't think that Mr. Rogni pled a direct takings claim. All of his issues refer to Section 1983. And even if he were found to have that, I don't think the 11th Circuit case is precedential here because it is the 11th Circuit. And in the Nick case, the Supreme Court refers throughout to the ability to bring a federal takings claim via 1983. Could we just focus in on the savings statute and the reference in the statute to the words otherwise than upon the merits?  So we've got that in the savings statute. Yes. Now let's go over to the Oklahoma State Court decisions. What was the merits question in state court? I believe the merits question in state court comes up on that Coca De Novo review from the Court of Civil Appeals in Oklahoma, where their decision is not only that he failed to exhaust his remedies, but also that as a matter of law, there was no taking. Well, let's break those two things up. Let's say that he didn't exhaust his administrative remedies. If that was the ground for the decision, is that a decision on the merits? I don't think so, Your Honor. So do you need the footnote to succeed in this appeal? In regard to statute of limitations? Yes. I do think that that addresses the statute of limitations argument. All right. Now, isn't the merits question on that whether the city substantially interfered with the property and failed to pay just compensation? They're saying, look, we couldn't use the property between 2011 and 2017. But did the courts really ever address that question? Isn't that the merits question? That is the merits question. And as part of the city's motion for summary judgment below, it had argued that there was no taking because it was a lawful use of the city's police power in this city ordinance that affected Mr. Rogney's property. So in the sense that the Court of Civil Appeals reviewed the entire record on its de novo review, that issue was in the city's brief to which Mr. Rogney did not respond. All right. But your position hinges on the no takings language in the footnote. Yes. At least on the statute of limitations. As to that tolling statute, yes. Section 100. Another reason that we believe the district court engaged in the correct analysis is that Mr. Rogney's claim, takings claim, is barred by issue preclusion as well due to the footnote by the Court of Civil Appeals. Mr. Rogney addresses the factors required for issue preclusion in his briefing as requiring a decision on the merits. And that is incorrect under Oklahoma law because this case involves an issue that was decided in a state court. The proper rule of preclusion would be the state court's rule of preclusion under Tent Circuit authority. And those factors are that it was litigated and determined in a prior action between the same parties and resolution was essential to the decision in the prior action. Did you address Mr. Wright's mootness argument? The mootness argument that it does not constitute a failure? Otherwise than on the merits? Well, the argument, yes, yes. I think that's what he was asking you. But there was an argument about this really was decided on a justiciability ground, not a merits ground. Correct. The operative opinion, and this is where it gets confusing because counsel likes to go back to the trial court decision, but because it was a de novo review by the Oklahoma Court of Civil Appeals, that is the operative decision that we're working with. We're not looking at what the trial court did because we have the subsequent decision. And that was also what was reviewed by the district court in rendering its ruling in this case. So did the Court of Appeals address mootness? I don't recall, Your Honor. I'm sorry. I think their opinion was largely focused on his failure to exhaust remedies. I think, as Your Honors indicated earlier, this is not a situation in which Mr. Rodney has been prevented from raising these claims. And, in fact, he could have brought a federal takings case at the time that the NIC decision came out. He has raised this issue, by my count, this is the seventh time. He just doesn't like the outcome. He raised it in the trial court in response to the city's motion to dismiss. He did a motion for rehearing. There was a motion for new trial. Then there was the appeal to the Court of Civil Appeals. Then there was the writ. And then he refiled this case. Are there any other questions I can answer? Unless you have something else, I don't think we do. I think we're okay. Thank you. Thank you. Thank you, counsel. The case will be submitted. Counsel are excused. We appreciate your arguments.